CAPITAL DREDGE AND DOCK CORPORATION, Plaintiff-Appellant,

v.

MIDWEST DREDGING COMPANY, Defendant-Appellee.

No. 77–3122.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1978.

Decided April 5, 1978.

David J. Sherriff, Lyman Brownfield, Brownfield, Kosydar, Bowen, Bally & Sturtz, Columbus, Ohio, for plaintiff-appellant.

Arthur M. Sebastian, Sebastian, Marsh & Redmond, Columbus, Ohio, for defendant-appellee.

Before PHILLIPS, Chief Judge, and PECK and MERRITT, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This breach of contract action was brought in a state court, but was removed to the United States District Court by the defendant-appellee on a diversity of citizenship basis. 28 U.S.C. § 1332. Defendant thereupon filed a motion to dismiss the action for want of personal jurisdiction, and the granting of that motion forms the basis of the present appeal.

As the parties agree, the sole issue presented for review is whether the district court erred in granting defendant-appellee Midwest Dredging Company's (Midwest) motion to dismiss for lack of *in personam* jurisdiction, and the resolution of that question must in turn rest upon a resolution of whether the requisite "minimum contacts" occurred to lodge jurisdiction under the Ohio Long Arm Statute.

That statute is set forth in Rule 4.3, Ohio Rules of Civil Procedure, and in pertinent part provides as follows:

"Rule 4.3 PROCESS: OUT–OF–STATE SERVICE

(A) When service permitted. Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a non-resident of this state or is a resident of this state who is absent from this state. The term 'person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state; . . . ."

The district court concluded that sufficient minimum contacts had not been established by the plaintiff, on whom the burden rested of proving jurisdiction. *Weller v. Cromwell Oil Company,* 504 F.2d 927, 929–930 (6th Cir. 1974). We affirm.

The facts are not in dispute. Plaintiff-appellant Capital Dredge & Dock Corp. (Capital) entered into a sub-contract agreement with Midwest under which Capital undertook to perform all labor and provide materials for a marine dredging in Peoria, Illinois. As a part of said agreement, upon the insistence of Midwest a performance bond guaranteeing performance by Capital and insuring payment to Midwest in the sum of $1,001,776.85 was procured; Buckeye Union Insurance Company (Buckeye) wrote the bond. That contract was entered into in August, 1973, but by March of 1975 it became apparent to Capital that it would be unable to perform and sought to "re-sub" the job back to Midwest.

Negotiations were entered into, and it is the resulting contract which is at the heart of the controversy in litigation. William Wensink, then President of Capital, entered into negotiations with Midwest, which is a Minnesota corporation with its principal place of business in Ft. Smith, Arkansas, where the initial round of discussions occurred; others took place in Tampa, Florida. At the end of April, preliminary discussions terminated. The contract was mailed to Wensink in Cleveland, who took it to Columbus for the purpose of showing it to representatives of Nucorp, Inc., the parent

corporation of Capital. The contract was reviewed in Columbus by Nucorp personnel and by legal counsel. Several changes suggested by counsel caused modifications to be made in the basic agreement. These changes were communicated to Midwest's counsel in Ft. Smith by telephone in a call initiated by Capital. Midwest agreed to the modifications of the basic provisions and mailed an amended contract to Wensink in Cleveland.

To insure Buckeye's continuing obligations in connection with the performance bond it was necessary that Buckeye execute a new agreement. To this end, Wensink arranged a meeting at Buckeye's office in Columbus during the first week of May. Present at that meeting, among others, were Wensink, Bob Mullis (then a Vice President of Nucorp), William Fornshell (Vice President of Buckeye), David Dewitt (counsel to Capital) and Tom Griffis (a representative of Buckeye), but no representative of Midwest was present. Following initial discussions, Buckeye indicated its reluctance to approve the new agreement absent consent of Pentron, Inc., the indemnitor under the bond, and former parent of Capital. Wensink endeavored to secure Pentron's acquiescence to the new contract, but approval was denied. Wensink communicated this information to Midwest by telephone. Dewitt then suggested another meeting with representatives of Buckeye.

Such a meeting was held on May 13, 1975, but again without a Midwest representative. After further negotiations, Buckeye agreed to approve the new contract and continue to be obligated in accordance with the payment bond, subject to the addition of an addendum to the contract. The provisions of the addendum were communicated by telephone to Shaw, counsel to Midwest, by David Dewitt in a call initiated by him. Shaw agreed to the addendum, which ultimately became part and parcel of the basic contract. On May 14, 1975, Donald Lind, Vice President of Midwest, traveled to Columbus to obtain Capital's initial payment under the contract and to obtain the signature of Wensink. Tenwick gave Lind a check in the amount of $250,000.00 in performance of clause I(b) of the contract.

Recitation of the circumstances of this case closely follows appellant's presentation of the facts, and for present purposes they are considered in the light most favorable to it. Our determination of this appeal must depend upon whether Midwest has made itself amenable to suit in Ohio under the doctrine enunciated in the controlling cases in this Circuit, which are *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (1968), and *In-Flight Devices Corporation v. VanDusen Air, Inc.*, 466 F.2d 220 (1972). Speaking for the Court, Judge Celebrezze in *Southern Machine* postulated three criteria for determining the outer limits of *in personam* jurisdiction as follows:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.
>
> Second, the cause of action must arise from the defendant's activities there.
>
> Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

401 F.2d at 381. After reviewing the facts of that case and applying these tests, the Court observed, "Tennessee has a continuing interest in this continuing relationship, and apparently Mohasco has a continuing interest in profiting from the Tennessee market. It cannot complain if along with the profits from the Tennessee market it must also accept the process from the Tennessee courts" (401 F.2d 385–6), and concluded that *in personam* jurisdiction had attached. That case, however, is so clearly distinguishable on its facts from the present case as to make a comparison of those facts superfluous.

Similarly, the circumstances of *In-Flight Devices* are distinguishable from those now before us, but in present context the decision is significant because the opinion, also written by Judge Celebrezze, reaffirms this Circuit's adherence to the three branch test

of *Southern Machine* (466 F.2d 226). In *In-Flight Devices* plans for the delivery of the equipment involved and a detailed discussion concerning its operational features took place at a meeting in Ohio. Thereafter performance under the contract was begun at In-Flight's plant from which it subsequently shipped the equipment to VanDusen in St. Louis, with occasional rush orders being sent direct to VanDusen subsidiaries (including one such delivery to an Ohio subsidiary), and the three prong test was found to be satisfied.

On the record before him in the present case, United States District Judge Robert M. Duncan concluded, "The 1975 agreement was sought by plaintiff Capital. All negotiations were conducted outside the State of Ohio. Each of the phone calls was initiated by plaintiffs in Ohio to defendants' representatives in other states. The only direct contact between Midwest and plaintiffs with respect to the contract out of which the causes of action are alleged to arise was its vice-president delivering the final contract to the offices of Capital in Ohio and his receiving the first payment under the contract. Plaintiff was to produce no goods in Ohio, nor was any of its performance under the contract to have any impact on Ohio other than its obligation to pay money under the agreement. These facts are simply insufficient to establish long-arm jurisdiction over defendant." See *Air Transport Inc. v. Ransom Sales and Brokerage, Inc.*, 333 F.Supp. 1106, 1108 (S.D.Ohio 1971)." We agree.

Appellee's only Ohio visitation can hardly be construed as providing the requisite "minimum contact." It occurred when a representative of the appellee came into the state to pick up a check and to present the contract, which had been prepared and signed by appellee's officers in Arkansas, to appellant for signature. Judge Duncan's characterization of this visit as "a convenience" to appellant seems appropriate. On appeal, appellant attaches great significance to the fact that the bond was prepared by an Ohio surety company and was executed in Ohio, and it is for that reason that a detailed description of the negotiation and execution of the bond was set forth earlier in this opinion. However, we agree with Judge Duncan's description of this circumstance as "fortuitous," and as entirely irrelevant to the present consideration.

Affirmed.