**TELECAST, INC., Plaintiff,**

v.

**PACIFIC CABLEVISION, Defendant.**

**No. 89–CV–72853–DT.**

United States District Court,
E.D. Michigan, S.D.

Feb. 16, 1990.

Lawrence G. Campbell and Mary Beth Kelly, Detroit, Mich., for plaintiff.

Fred Mallender, II, Birmingham, Mich., for defendant.

## OPINION

DUGGAN, District Judge.

Plaintiff, Telecast, Inc., brings this action to collect monies allegedly due under a promissory note made by defendant Pacific Cablevision, and delivered by defendant to plaintiff on August 17, 1988. Currently, defendant has brought a motion to dismiss for lack of personal jurisdiction. *See* Fed. R.Civ.P. 12(b)(2). Plaintiff opposes this motion.

"The burden of establishing jurisdiction is on the plaintiff." *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). Where, as here, the court decides the motion on the pleadings, affidavits and other written submissions, "the burden on the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Welsh*, 631 F.2d at 439 (citation omitted). "[T]he plaintiff should be required only to make a prima facie case of jurisdiction, that is, he need only 'demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.'" *Welsh*, 631 F.2d at 438 (citation omitted).

In the present case, defendant contends that this Court lacks personal jurisdiction over it because (1) it is neither incorporated nor has its principal place of business in Michigan; (2) it does not conduct business in Michigan; (3) the promissory note was entered into in California, pertained to assets in California and called for payment in California, and (4) the parties chose to have California law apply to the promissory note.

Because this case is before this Court on the basis of diversity of citizenship, this Court must determine whether defendant's arguments warrant dismissal for lack of personal jurisdiction by applying the law of the state in which it sits: Michigan. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988). The Michigan long-arm statute provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of

the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

\* \* \* \* \* \*

M.C.L. § 600.715(1).

■ As construed by this Court, defendant has not argued that it did not transact any business within the state or that plaintiff's cause of action did not arise out of that business. Defendant does, however, contend that it "lacks sufficient contacts with the State of Michigan and this district to satisfy the requirements of due process." Defendant's Memorandum at p. 2. The pleadings, affidavits and other documentation presented to this Court reveal the following:

(1) Plaintiff is a Michigan corporation with an office in California;

(2) Defendant is a California corporation who regularly has no contact with Michigan.

(3) Sometime in 1988, negotiations took place between plaintiff and defendant relating to the sale of assets owned by plaintiff but located in San Diego, California.

(4) The "negotiations" consisted of:

(a) a representative of defendant making numerous phone calls to plaintiff's agent in Michigan, and

(b) Defendant directing correspondence to Telecast at its Michigan office.

(5) As a result of these negotiations a contract for the sale of assets and a promissory note were executed.

(6) Both of these documents were executed in California.

(7) The asset purchase agreement called for interpretation under Michigan law.

(8) The promissory note called for payment to Telecast "at its principle office in San Diego, California" and provided that it would be governed and construed in accordance with the laws of California.

The Court is satisfied that these activities are sufficient to constitute the "transaction of any business" in Michigan and that plaintiff's cause of action arose out of such transaction of business, (a cause of action arises out of the transaction of any business where the cause of action "was made possible by" or "lies in the wake of" the defendant's state contacts. *See Third National Bank v. Wedge Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir.1989)). Therefore, the Michigan long-arm statute confers upon the district court personal jurisdiction over defendant. *See Lanier v. American Board of Endodontics,* 843 F.2d 901, 905–909 (6th Cir.1988).

Even though the defendant's activities may satisfy the initial "two-step" analysis of *Lanier, i.e.* that the defendant's conduct constituted the "transaction of any business" and that plaintiff's cause of action arose out of that "transaction of any business", thus meeting the requirements of Michigan's long-arm statute, nevertheless, the statute "must also pass constitutional muster as applied in this case". *Lanier, supra* at 909.

Under the federal constitution, long-arm jurisdiction may only be asserted if, 1) defendants purposefully availed themselves of the privilege of conducting activities in Michigan; and 2) "the acts of the defendant or consequences caused by the defendant must have had a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable."

*Ibid.,* (citation ommitted).

■ This Court does not believe that the defendant purposefully availed itself of conducting activities in Michigan. Defendant's contacts with Michigan were very limited. They involved some phone calls to an individual at plaintiff's place of business in Michigan and some correspondence to its Michigan office. While such activity *may* be sufficient to meet the "transaction of business" test, and when combined with other factors, may be sufficient to meet due process, such other factors are not present here.

Unlike the defendant's activities in *Lanier, supra,* defendant's conduct did not look toward further involvement in Michigan (except possibly that the Michigan corpora-

tion may have expected to receive payments in Michigan) [1].

In *Lanier*, the real object of the business transaction was to acquire and exploit board certification in Michigan to acquire a Michigan resident's fees to offset costs, to contribute to the advancement of endodontics through the certification of candidates in that specialty by adding to its roster of Michigan diplomates, and to extend its influence and prestige in Michigan. "Thus, the real object of the Board's contacts with Michigan [was] to have ongoing, far-reaching consequences in the Michigan dental services market." *Lanier, supra* at 911. In the present case, the contract between the parties envisioned no future significant consequences in Michigan.

In *Capital Dredge & Dock Corp. v. The Midwest Dredging Co.*, 573 F.2d 377 (6th Cir.1978), the Sixth Circuit concluded that there was no personal jurisdiction in an Ohio district court over a Minnesota corporate defendant where the Minnesota corporation was not doing business in Ohio, the contract which it was to perform did not involve any activity in Ohio, and the negotiations leading up to the contract on behalf of the defendant were conducted in Minnesota. The Court stated that

> [t]he only direct contact between Midwest and plaintiffs ... was its vice-president delivering the final contract to the offices of Capital in Ohio and his receiving the first payment under the contract. Plaintiff was to produce no goods in Ohio, nor was any of its performance under the contract to have any impact on Ohio other than its obligation to pay money under the agreement. These facts are simply insufficient to establish long-arm jurisdiction over defendant.

*Capital Dredge, supra,* at 380.

Similarly, in *Speckine v. Stanwick Int'l Inc.*, 503 F.Supp. 1055 (W.D.Mich.1980), an agent for a Virginia corporation telephoned a Michigan plaintiff to discuss an application for employment and subsequently mailed to plaintiff, in Michigan, an employment application. These activities, the Court concluded, did not subject the defendant to jurisdiction in Michigan.

> In the case at bar, defendant has done nothing more than to respond to plaintiff's unilateral request for employment by calling him and then sending a plane ticket enabling plaintiff to travel to Virginia. Stanwick did not undertake to sell or transport any goods to Michigan, to perform any services in Michigan or to do anything in Michigan other than to discuss an employment opportunity with a Michigan resident.
>
> \* \* \* \* \* \*
>
> In fact, this court finds that defendant Stanwick did less to purposefully avail itself of any Michigan opportunities than did the defendant in *Capital Dredge & Dock Corp. v. Midwest Dredging*, 573 F.2d 377 (6th Cir.1978) where the Sixth Circuit affirmed a holding that the trial court had no jurisdiction over the defendant.

*Speckine, supra,* at 1058.

A defendant subjects itself to the forum's jurisdiction where it has deliberately "engaged in significant activities within the state or has created 'continuing obligations' between himself and residents of the forum...." *Lanier, supra* at 910.

> Yet the Supreme Court has stopped short of allowing jurisdiction *whenever* an out-of-state defendant contracts with a forum resident. Rather, prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing need be addressed to evaluate, in a "highly realistic" way, the intended future consequences that are "the real object of the business transaction."

*Ibid.,* (citation omitted).

As stated previously, the contract between the present parties envisioned no future significant consequences in Michigan. If the parties' activities in reaching the agreement had significant Michigan involvement, it may not be necessary to look at anticipated future involvement or future consequences in Michigan. But where, as here, the Michigan involvement in creating the contract is very limited, it becomes

---

[1]. The promissory note, however, specifically called for payment in California.

important to consider what future involvement or consequences in Michigan, if any, can be anticipated as a result of the agreement.[2]

As stated by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries Inc.*, 401 F.2d 374, 384 (6th Cir.1968):

Since it is clear that this cause of action arises from the licensing agreement, we must confront the final question: Does the licensing agreement have a substantial enough connection with Tennessee to make it reasonable to compel Mohasco to come to Tennessee to defend this suit?

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 the Supreme Court stated:

[W]ith respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.

The Court went on to say, however, that: If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.

*Burger King, supra*, 105 S.Ct. at 2185.

The Court in *Burger King* concluded that the district court in Florida properly acquired personal jurisdiction over the Michigan resident. In so holding, however, the Court found significant continuing activities involving Florida. As stated by the Court, "[the Michigan resident] entered into a carefully structured 20–year relationship that envisioned continuing wide-reaching contacts with Burger King in Florida." *Id.* at 2186. (See also other factors indicating a "continuing relationship" discussed by the *Burger King* Court at 105 S.Ct., pp. 2186 and 2187).

Unlike the "continuing relationship" which existed in *Lanier, Southern Machine Company,* and *Burger King, supra,* the anticipated future involvement with Michigan, in the case at hand, was virtually non-existent. Because the Michigan "involvement", *i.e.* the activities "in Michigan" which gave rise to the creation of the contract, were minimal and because the contract envisioned no significant continuing relationship with Michigan, this Court does not believe that the defendant could foresee the possibility of being haled into court in Michigan. It is therefore unreasonable to compel defendant to defend this action in Michigan. The "contacts" with Michigan are insufficient to allow this Court to obtain personal jurisdiction over the defendant. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction must therefore be GRANTED.

An order shall issue forthwith.

**2.** The Court is not unmindful of the fact that the two relevant documents, *i.e.* the asset purchase agreement and the promissory note, contained "choice of law" provisions. A "choice of law" provision is a factor which the Court should consider in its jurisdictional analysis. *Burger King,* 105 S.Ct. at 2187. However, since these documents have conflicting "choice of law" provisions, *i.e.* one provides for application of Michigan law and the other provides for the application of California law, such "choice of law" provisions are not particularly persuasive in deciding the jurisdictional issue.