**AM DIAGNOSTICS, INC.; Eugene Schuster; Quest Biotechnology, Inc.; and Venture Funding, Ltd., Plaintiffs,**

v.

**Jerry DENNEY; The National Commercial Bank; Monitor Bioscience, Ltd.; William Waddington; and Patrick Maguire, Defendants.**

**No. 92–71157.**

United States District Court,
E.D. Michigan, S.D.

Jan. 14, 1993.

Mayer Morganroth, Southfield, MI, for plaintiffs.

Ralph W. Barbier, Jr., Grosse Pointe Woods, MI, for defendant Jerry Denney.

Martin Domb, New York City, for defendant National Commercial Bank.

Philip T. Carter, Bloomfield Hills, MI, for defendant NCB.

Laurie S. Gill, Boston, MA, for defendants Monitor and Maguire.

David H. Oermann, Detroit, MI, for defendants Monitor, Waddington and Maguire.

## OPINION AND ORDER ON MOTIONS TO DISMISS AND FOR TRANSFER

GADOLA, District Judge.

On May 12, 1992, defendant Jerry Denney filed a motion to dismiss for lack of personal jurisdiction; defendant the National Commercial Bank ["NCB"] filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue; and defendants Monitor Bioscience, Ltd. ["Monitor"], William Waddington, and Patrick Maguire filed a joint motion to dismiss for lack of personal jurisdiction. On June 26, 1992, plaintiffs AM Diagnostics, Inc. ["AMD"], Eugene Schuster, Quest Biotechnology, Inc. ["Quest"], and Venture Funding, Inc. ["Venture"] filed joint "answers" to the motions to dismiss; Denney filed a reply July 16, 1992; NCB filed a reply July 17, 1992; and Monitor, Waddington, and Maguire filed a reply July 17, 1992.

## FACTS

In August 1990, the London branch of NCB, a Saudi Arabian bank, extended a £740,000.00 loan facility ["Facility"] to American Monitor (UK) Ltd. ["AMUK"], an English corporation. AMUK's business was to sell laboratory testing machines called "analyzers" and chemical reagents to customers in the United Kingdom. The analyzers and reagents were made and shipped to AMUK in England by AMUK's parent company, plaintiff AMD, an Indiana corporation. The Facility was evidenced by a letter agreement between NCB and AMUK. As security for the loan, AMUK and NCB entered into a debenture whereby AMUK granted NCB a security interest in all of AMUK's assets. Both the Facility and the debenture were negotiated and executed in England, and both are by their terms governed by English law. The debenture gave NCB the right, in the event of a default by AMUK, to appoint a receiver in accordance with English law.

As additional security for the loan, NCB had requested the guarantee of plaintiff AMD (AMUK's parent company) and AMD's directors. AMD and its directors refused to give these guarantees. Instead, NCB was offered and subsequently accepted the guarantees of plaintiffs Schuster and Venture. Accordingly, Schuster and Venture each entered into a guarantee with NCB dated August 7, 1990.[1] The guarantees of Schuster and Venture are by their terms governed by New York law. In addition, each guarantor, in the language of the guarantees, (a) submitted to the jurisdiction of New York courts, (b) appointed an agent for service of process in New York, (c) waived any right to a jury, (d) waived any defenses of the borrower AMUK, and (e) waived any counterclaims against NCB.

Schuster, a Michigan citizen, and Venture, a Michigan corporation, are shareholders of AMD. AMD is the sole shareholder of AMUK. The fourth plaintiff in this case, Quest, is also a shareholder of AMD. AMUK is not a party to this action.

The Facility was to expire, by its terms, June 30, 1991. On June 28, 1991, AMUK and NCB entered into a "side letter" whereby NCB extended the Facility to December 31, 1991, but with new drawings permitted only until September 30, 1991.

On September 16, 1991, AMUK defaulted under the Facility by failing to pay and admitting its inability to pay an invoice in the amount of £19,963.00. NCB advised AMUK that this constituted an event of default, that as a result NCB had no further commitment to AMUK under the Fa-

---

**1.** Apparently, the guarantees were not executed in Michigan. The only reference made to the execution of the guarantees is the admission by plaintiffs that "NCB did not send a representative to Michigan." Plaintiffs' resp. at 5. NCB affirmatively states that "[t]he Guarantees were negotiated, signed and delivered to NCB solely through the mail and by telephone." NCB's br. at 7.

cility, and that the advances outstanding under the Facility continued to be repayable on demand at any time. However, NCB did not demand payment in full at that time. NCB sent a copy of its default notice to the guarantors Schuster and Venture.

Within days of this default notice, AMUK asked NCB to advance an additional £50,000.00 to enable AMUK to meet payroll and other current expenses. AMUK informed NCB that AMUK's parent, plaintiff AMD, was unable or unwilling to advance any funds to AMUK. NCB agreed to advance the funds requested by AMUK to avert its imminent collapse. By mid-October 1991, AMD still had not provided any financial help to its subsidiary AMUK; and AMUK requested a further advance from NCB of nearly £70,000.00. NCB informed AMUK by letter that it would consider making such further advances only upon certain conditions, including a guarantee from AMD and other forms of security. NCB sent copies of this letter to the guarantors. The following week, AMD informed NCB that AMD would not agree to any of these conditions. On October 31, 1991, NCB wrote (a) to AMUK, demanding payment of the £554,-299.00 then outstanding under the Facility and (b) to each guarantor, demanding payment of that same sum under the guarantees.

On November 1, 1991, in accordance with its alleged rights under the debenture and English insolvency law, NCB appointed two licensed insolvency practitioners from the London office of Ernst & Young, chartered accountants, as administrative receivers of AMUK. That same day the receivers accepted their appointment and assumed their duties. Thereafter, the receivers notified all creditors of AMUK of their appointment and activities.

After analyzing the precarious financial condition of AMUK, the receivers concluded that, to maximize the return to creditors, AMUK should be sold as a going concern, rather than liquidated. Accordingly, the receivers advertised the business for sale while they continued to operate the business. They received only one offer, that from a group that included the English-based managers of AMUK itself. After negotiating with the group and increasing the amount of their offer, the receivers recommended accepting the group's offer. On December 4, 1991, the receivers sold AMUK's business, including most of its assets, to defendant Monitor, an English corporation newly formed by AMUK's management group, for the purchase price of £120,000.00.[2] The receivers have since continued to collect AMUK's assets and tried to sell its remaining assets not included in the sale to Monitor.

On March 4, 1992, the instant suit was filed by plaintiffs. In essence, plaintiffs allege that (1) defendants conspired to steal away AMUK and thereby deprive plaintiffs, as direct and indirect shareholders of AMUK, of their allegedly valuable interest in AMUK; and (2) defendants made various misrepresentations to plaintiffs concerning (a) the Facility and related loan agreements and (b) AMUK's efforts to obtain alternative sources of financing.

As of April 30, 1992, after accounting for all receipts by and operating expenses of the receivers, there remained approximately £413,000.00 due to NCB under the Facility, not including the receivers' and attorneys' fees. On May 5, 1992, NCB filed an action in the Southern District of New York against the two guarantors, defendants Schuster and Venture, to recover the deficiency due NCB.

## STANDARD OF REVIEW

It is plaintiffs' burden to establish the existence of personal jurisdiction over defendant. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). A court must interpret the pleadings and affidavits in the light most

---

**2.** The group that formed Monitor to purchase AMUK's assets included two of the English-based managers of AMUK—defendants Waddington and Maguire—and certain other investors including defendant Denney, who is alleged to be a former president and director of AMD, and whose company, Synermed, Inc., became a shareholder of Monitor in December 1991.

favorable to plaintiffs. *Id.* Where the court finds that there are no issues of credibility or disputed issues of fact, it may decide the motion on the basis of written materials. *Andrews Univ. v. Robert Bell Indus.,* 685 F.Supp. 1015, 1017 (W.D.Mich. 1988).

## APPLICABLE LAW

Michigan's general personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.701, reads in relevant part:

The existence of any of the following relationships between an individual and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the individual or his representative and to enable such courts to render personal judgments against the individual or representative.

(1) Presence in the state at the time when process is served.

(2) Domicile in the state at the time when process is served.

(3) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.

Michigan's limited personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.705, reads in relevant part:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Michigan's corporate general personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.711, reads in relevant part:

The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.

(1) Incorporation under the laws of the state.

(2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.

(3) The carrying on of a continuous and systematic part of its general business within the state.

Michigan's corporate limited personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.715, reads in relevant part:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

## ANALYSIS

In the instant case, five defendants have filed three separate motions to dismiss for lack of personal jurisdiction; and one defendant had filed a motion for change of venue. This opinion will address each defendant's personal jurisdiction argument and then address NCB's transfer of venue argument.

### I

The basis for any challenge to personal jurisdiction must begin with an examination of the state's long-arm statutes. In the instant case, it is quite obvious that this court does not have general personal jurisdiction over Denney. Denney was not

present in Michigan when process was served upon him. Denney was also not domiciled in Michigan when process was served upon him. Denney has been a resident of Montreal, Quebec, Canada, since 1989. Finally, Denney did not consent to the jurisdiction of this state. Therefore, section 600.701 does not apply.

The more complicated question is whether this court has limited personal jurisdiction over Denney under Section 600.705. Because Denney does not conduct *any* business within the state of Michigan, Section 600.705(1) will not apply. Further, this court finds that Denney has not caused "consequences to occur[ ] in the state resulting in an action for tort." *Id.* at § 600.-705(2). Michigan and federal case law is replete with examples of business transactions that have occurred outside the state of Michigan which have "resulted" in an action for tort. *See, e.g., Schmidt v. Wilbur*, 775 F.Supp. 216, 221 (E.D.Mich.1991); *Sifers v. Horen*, 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971); *cf. Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir.1988).[3] In essence, "any nexus between transaction and tort shall allow limited personal jurisdiction to operate." *Brabeau v. SMB Corp.*, 789 F.Supp. 873, 876 (E.D.Mich.1992).

However, plaintiffs have failed to allege any act or consequence done or caused by Denney in Michigan. Plaintiffs' response and complaint fail to state any act committed by Denney that resulted in any consequence in Michigan. Further, Denney has affirmatively stated that he

did not cause any act to be done in Michigan resulting in an action for tort.... Plaintiffs have failed to identify one phone call made by Denney, one piece of correspondence to Plaintiffs signed by Denney, or one meeting attended by Denney.

Denney reply at 2–3. This court agrees with this uncontroverted statement. Plaintiffs have utterly failed to show any nexus between Denney and the state of Michigan.

Defendant Denney cannot be brought under this court's jurisdiction pursuant to Mich.Comp.Laws Ann. § 600.705(2). Therefore, Denney's motion to dismiss will be granted pursuant to Fed.R.Civ.P. 12(b)(2).

## II

■ The next issue is whether this court may exercise personal jurisdiction over defendant NCB. Again, it is quite obvious that this court does not have general personal jurisdiction over NCB. NCB is and was not incorporated under the laws of the state of Michigan. NCB also did not consent to the jurisdiction of this state. Finally, NCB has not carried on a continuous and systematic part of its general business in this state. NCB's three unrelated loans to a Michigan borrower are insufficient for this court to exercise general personal jurisdiction over NCB. These loans represent a minute fraction of NCB's entire loan portfolio. Therefore, general personal jurisdiction and section 600.711 do not apply.

The more complicated question is whether this court has limited personal jurisdiction over NCB under section 600.715. Arguably, the three unrelated loans made by NCB to a Michigan borrower constitute "[t]he transaction of any business within the state." Mich.Comp.Laws Ann. § 600.-715(1). However, in Michigan,

The concept of "limited personal jurisdiction" recognizes that the claim must arise out of the act or acts which create the basis for jurisdiction. In other words, the cause of action must result from the situation creating the jurisdictional relationship between the defendant and the state.

*Lazzaro v. Charlevoix Lakes*, 108 Mich. App. 120, 123–24, 310 N.W.2d 295 (1981) (footnote omitted); *see also First Sec. Bank v. McMillan*, 627 F.Supp. 305, 309 (W.D.Mich.1985). The claims brought by plaintiffs emerge from NCB's Facility, debenture, and guaranty agreements. The unrelated loans made to an undisclosed

---

**3.** The court concludes that judicial pronouncements on sections 600.705 and 600.715 are inter-

changeable. *See Schmidt,* 775 F.Supp. at 221.

Michigan borrower are not the subject of this lawsuit. Therefore, section 600.715(1) does not apply.

However, this court finds that NCB may have caused "consequences to occur[ ] in the state resulting in an action for tort." Mich.Comp.Laws Ann. § 600.715(2). The guaranty agreements, admittedly not executed in Michigan, did adversely affect Schuster and Venture when compensation was demanded by NCB. Further, NCB officials apparently made telephone calls to Schuster and Venture officials concerning the signing and delivery of the guarantees, AMUK's default, and NCB's demand upon the guarantors. Again, any nexus between transaction and tort allows limited personal jurisdiction to operate. *See Brabeau,* 789 F.Supp. at 876. Therefore, limited personal jurisdiction through section 600.715(2) arguably applies.

■ After establishing that the state allows for limited personal jurisdiction to attach through its long-arm statute, this court must decide whether the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). After close examination of the case law on point, this court holds that the exercise of limited personal jurisdiction over NCB would offend defendant's due process rights under the fourteenth amendment.

The United States Court of Appeals for the Sixth Circuit has set out three criteria that must be met in order for personal jurisdiction to comport with due process:

(1) defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the foreign state;

(2) the cause of action must arise from defendant's activities in the forum state; and

(3) the acts of defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable.

*LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968); *Brabeau,* 789 F.Supp. at 877; *Ag–Chem Equip. Co. v. Avco Corp.,* 666 F.Supp. 1010, 1013 (W.D.Mich.1987).

First, NCB has not purposefully availed itself of the state of Michigan. In fact, the realistic view of the transactions at issue would point to an avoidance of, not purposeful availment of, the forum state. *Brabeau,* 789 F.Supp. at 879.

The Supreme Court has stopped short of allowing jurisdiction whenever an out-of-state Defendant contracts with a forum resident.... The actual course of dealing need[s] to be addressed to evaluate, in a "highly realistic" way, the intended future consequences that are the real object of the business transaction.

*Lanier,* 843 F.2d at 910. NCB made telephone calls to Schuster and Venture in Michigan about drawing up guaranty agreements. NCB then mailed the agreements to Schuster and Venture in Michigan. Finally, the guarantees are to be read in accordance with New York law.

The instant case is very similar to *Telecast, Inc. v. Pacific Cablevision,* 731 F.Supp. 1319 (E.D.Mich.1990). In *Telecast,* the plaintiff, a Michigan corporation, negotiated with the defendant, a California corporation, for the sale of plaintiff's assets located in California. The negotiations consisted of telephone calls to Michigan, correspondence sent to Michigan, and a contract and promissory note both executed in California. Both the note and the contract were to be construed in accordance with California law. United States District Court Judge Patrick J. Duggan held that defendant's contacts with Michigan were too attenuated to sustain limited personal jurisdiction. Judge Duggan stated that "defendant's conduct did not look toward further involvement in Michigan...." *Id.* at 1321. The same is true in the instant case. Here, NCB's securing of two guaranty agreements did not pave the way for further involvement in this state's financial markets.

In *Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377 (6th Cir. 1978), the Sixth Circuit concluded that personal jurisdiction did not exist in an Ohio district court over a Minnesota defendant where the Minnesota corporation was not doing business in Ohio, the contract it entered into with the plaintiffs called for no activity in Ohio, and the negotiations did not take place in Ohio.

The only direct contact between [defendant] and plaintiffs ... was its vice-president['s] delivering the final contract to the offices of Capital in Ohio and his receiving the first payment under the contract. Plaintiff was to produce no goods in Ohio, nor was any of its performance under the contract to have any impact on Ohio other than its obligation to pay money under the agreement. These facts are simply insufficient to establish long-arm jurisdiction over defendant.

*Id.* at 380. In the instant case, NCB does not conduct business in Michigan, the guaranty agreements call for no activity in Michigan, and the negotiations did not take place in Michigan. Furthermore, no NCB official traveled to Michigan to deliver the contract. Therefore, the contacts present here are less than those in *Capital Dredging*.

The plurality opinions of Justices Stevens and O'Connor in *Asahi Metal Indus. v. Superior Ct.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), are also instructive. Justice O'Connor, with whom the Chief Justice, Justice Powell and Justice Scalia joined, stated that purposeful availment is not met where defendant neither conducts nor solicits business in the state; has no offices, agents, employees or property in the state; and neither advertises in nor designs its products for sale in the state. *Id.* at 112–13, 107 S.Ct. at 1032. Justice Stevens, with whom Justice White and Justice Blackmun joined, assumed that purposeful availment must take into account the volume, value and hazardous character of the products. *Id.* at 122, 107 S.Ct. at 1037. ("over 100,000 units annually over a period of several years would constitute 'purposeful availment' "). The two guaran-

ty agreements, along with their preliminary negotiations, do not rise to the level stated by Justice Stevens.

Also, telephone calls and mailings into the state do not rise to the level of minimum contacts where personal jurisdiction attaches. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1177 (6th Cir.1992); *LAK*, 885 F.2d at 1301; *Rann v. W.P. McInnis*, 789 F.2d 374, 376 (6th Cir.1986). Finally, as mentioned before, the guaranty agreements contain a choice of law provision that looks squarely to New York as the forum. The Supreme Court has declared that a choice of law provision in a contract is a factor which a district court should consider in its jurisdictional analysis. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 2178, 85 L.Ed.2d 528 (1985). Along with the choice of law factor, this court holds that NCB's attenuated contacts with this forum are insufficient to comprise "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Therefore, factor number one of the *LAK* test has not been met.

Second, the two activities of defendant in Michigan, the two guaranty agreements, may have given rise to plaintiffs' alleged damages. Plaintiffs do ask for declaratory judgments resolving the guaranty agreements. Therefore, factor number two of the *LAK* test has been met.

Finally, it appears unreasonable to subject NCB to jurisdiction in the state of Michigan. In determining the reasonableness of the exercise of personal jurisdiction, a court must consider

(1) the burden upon defendant;

(2) the interests of the forum state;

(3) plaintiffs' interest in obtaining relief; and

(4) the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction.

See *Asahi,* 480 U.S. at 113, 115, 107 S.Ct. at 1033, 1034 (O'Connor, J., for a unanimous court); *Brabeau,* 789 F.Supp. at 878. The burden placed upon NCB is severe. NCB must not only travel great distances but must also defend itself in a foreign tribunal.

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

*Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033 (O'Connor, J., for a unanimous court).

The interests of the forum state are admittedly great. Every state wishes to shield its citizens from harm and provide an avenue for redress. Further, it is surely in plaintiffs' interests to obtain relief. However, there are international procedural and substantive policies that might cause concern in this case. A number of plaintiffs' claims appear to involve the laws of England and not of a jurisdiction within this country. It must be remembered, though, that these are factors to be weighed only when certain minimal contacts have been established. *Id.* (O'Connor J., for a unanimous court). In the instant case, insufficient contacts have been shown. *See id.* at 112, 107 S.Ct. at 1032 (O'Connor, J., for a four justice plurality); *id.* at 122, 107 S.Ct. at 1037 (Stevens, J., for a three justice plurality). Therefore, *LAK* factor number three is also inapplicable.

*LAK* shows that NCB's due process rights would be violated if this court exercised limited personal jurisdiction. *Cf. Fielder v. First City Nat'l Bank of Houston,* 807 F.2d 315, 317 (2d Cir.1986) (out-of-state bank's telephone calls and mailings "cannot confer jurisdiction on this court.") (decided on New York's long-arm statute, N.Y.Civ.Prac. L & R. 302(a)). Therefore, this court determines that it does not have personal jurisdiction over NCB and NCB's

motion to dismiss will be granted pursuant to Fed.R.Civ.P. 12(b)(2).

### III

■ Third, this court also lacks personal jurisdiction over defendant Monitor. Monitor is and was not incorporated under the laws of the state of Michigan. Monitor also did not consent to the jurisdiction of this state. Finally, Monitor has not carried on a continuous and systematic part of its general business in this state. Therefore, general personal jurisdiction and section 600.711 do not apply.

Further, this court also may not exercise limited personal jurisdiction over Monitor. Plaintiffs have put forth no proof that Monitor "transact[s] ... any business within the state." Mich.Comp.Laws Ann. § 600.715(1). Additionally, if Monitor did transact business in Michigan, such business must emanate from the nexus of facts leading to this lawsuit. *See Lazzaro,* 108 Mich.App. at 123–24, 310 N.W.2d 295; *see also McMillan,* 627 F.Supp. at 309. There is no indication that such is the case. Therefore, section 600.715(1) does not apply.

Additionally, this court finds that Monitor did not cause "consequences to occur[ ] in the state resulting in an action for tort." Mich.Comp.Laws Ann. § 600.715(2). Plaintiffs have put forth no proof that Monitor did anything throughout this entire transaction other than offer to buy AMUK as a going concern.[4] This purchase was consummated in England. Without the purchase, Schuster and Venture would still be liable under their guaranty agreements. Also, any alleged conspiracy between Monitor and the remaining defendants is a tenuous link to this forum at best. A better, although not necessarily sufficient argument, would be that an alleged conspiracy between defendants to drive AMUK out of business harmed AMD, the sole shareholder of AMUK. Because AMD is located in Indiana, this jurisdictional argument would

---

**4.** This court also questions whether it may exercise personal jurisdiction over a defendant corporation which had not been incorporated during most of the time span at issue. *See Brake*

*Shop, Inc. v. Dacey,* 793 F.Supp. 154, 156 (E.D.Mich.1992). However, this court will not address this issue because it is not necessary to the resolution of the motion.

also be unavailing. Therefore, this court finds that section 600.715(2) is inapplicable and limited personal jurisdiction is lacking.

## IV

██ Fourth, this court also lacks personal jurisdiction over defendant Waddington. Waddington was not present in Michigan when process was served upon him. Waddington was also not domiciled in Michigan when process was served upon him. Waddington is a citizen of the United States and a resident of the United Kingdom since 1979. Finally, Waddington did not consent to the jurisdiction of this state. Therefore, section 600.701 does not apply.

This court also finds that limited personal jurisdiction over Waddington is lacking under Section 600.705. Because Waddington does not conduct *any* business within the state of Michigan, Section 600.705(1) will not apply. Further, this court finds that Waddington has not caused "consequences to occur[ ] in the state resulting in an action for tort." Mich.Comp.Laws Ann. § 600.705(2). It is true that "any nexus between transaction and tort shall allow limited personal jurisdiction to operate." *Brabeau*, 789 F.Supp. at 876. However, this court notes that plaintiffs have asserted only one type of contact between Waddington and the forum state. Apparently, Waddington made telephone calls to Schuster and Venture officials concerning AMUK. Nevertheless, telephone calls alone are insufficient to convey personal jurisdiction over defendant. *See Griepentrog*, 954 F.2d at 1177; *LAK*, 885 F.2d at 1301. Further, these telephone calls did not culminate in tortious injury to Schuster and Venture, at best indirect shareholders and guarantors of AMUK. Defendant Waddington cannot be brought under this court's jurisdiction pursuant to Mich.Comp.Laws Ann. § 600.705(2). Therefore, Waddington's motion to dismiss will be granted pursuant to Fed.R.Civ.P. 12(b)(2).

## V

Finally, this court does not have personal jurisdiction over defendant Maguire. Maguire was not present in Michigan when process was served upon him. Maguire was also not domiciled in Michigan when process was served upon him. Maguire is a citizen of Ireland and a resident of the United Kingdom. Finally, Maguire did not consent to the jurisdiction of this state. Therefore, section 600.701 does not apply.

This court also finds that limited personal jurisdiction over Maguire is lacking under Section 600.705. Because Maguire does not conduct *any* business within the state of Michigan, Section 600.705(1) will not apply. Further, this court finds that Maguire has not caused "consequences to occur[ ] in the state resulting in an action for tort." Mich.Comp.Laws Ann. § 600.705(2). Again, it is true that "any nexus between transaction and tort shall allow limited personal jurisdiction to operate." *Brabeau*, 789 F.Supp. at 876. However, this court notes that plaintiffs have asserted only that Maguire made telephone calls to Schuster and Venture officials concerning AMUK. Again, telephone calls alone are insufficient to convey personal jurisdiction over defendant. *See Griepentrog*, 954 F.2d at 1177; *LAK*, 885 F.2d at 1301. Further, these telephone calls did not culminate in tortious injury to Schuster and Venture, at best indirect shareholders and guarantors of AMUK. Defendant Maguire cannot be brought under this court's jurisdiction pursuant to Mich.Comp.Laws Ann. § 600.705(2). Therefore, Maguire's motion to dismiss will be granted pursuant to Fed.R.Civ.P. 12(b)(2).

## VI

Because this court finds that personal jurisdiction over NCB is lacking, this court will deny NCB's motion for transfer of venue as moot.

## ORDER

Therefore, it is hereby ORDERED that Denney's motion to dismiss is GRANTED.

It is further ORDERED that NCB's motion to dismiss is GRANTED.

It is further ORDERED that Monitor, Waddington and Maguire's motion to dismiss is GRANTED.

It is further ORDERED that NCB's motion to transfer venue is DENIED as moot.

SO ORDERED.