**Juanita BRABEAU and Mark Brabeau, Plaintiffs,**

**and**

**Zurich Insurance Company, Intervening Plaintiff,**

v.

**SMB CORPORATION, a/k/a Sondermaschinenbau GMBH, Defendant.**

No. 91–75443.

United States District Court, E.D. Michigan, S.D.

March 20, 1992.

Opinion on Denial of Reconsideration May 12, 1992.

James H. Finney, Mt. Clemens, Mich., for plaintiffs.

William E. Clark, Southfield, Mich., for intervening plaintiff.

Richard H. Schliem, III, Christine E. Moore, Southfield, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT SMB CORPORATION'S MOTION TO DISMISS

GADOLA, District Judge.

Plaintiff Juanita Brabeau was allegedly injured at work by a printing press manufactured by defendant SMB Corporation ["SMB"]. Ms. Brabeau's employer, Brechteen, owned and operated the printing press manufactured by SMB. Plaintiffs filed their complaint in Macomb County Circuit Court. Defendant removed the

case to this court October 21, 1991. Defendant then filed the instant motion to dismiss December 18, 1991, pursuant to Fed. R.Civ.P. 12(b)(2). Plaintiffs responded December 23, 1991; and defendant replied December 27, 1991. Subsequently, Zurich Insurance Company ["Zurich"] was allowed to intervene as a party-plaintiff by order of this court February 21, 1992.[1] Zurich filed its response to defendant's motion March 3, 1992. Defendant filed its reply to Zurich's response March 9, 1992.

## FACTS

Ms. Brabeau was injured while operating a printing press owned and maintained by Brechteen and manufactured by defendant. Brechteen is in the business of printing. The printing press in question is used by Brechteen to print labels on sausage casing.

As alleged by defendant and not disputed by plaintiffs, SMB has its principal place of business in Braunschweig, Germany. It manufactures specialized printing presses used by the food industry.

As alleged by defendant and not refuted by plaintiffs, the first contact between SMB and Brechteen occurred in 1976 when Brechteen personnel telephoned SMB in Braunschweig, Germany. Brechteen is a wholly-owned subsidiary of Naturin, a European entity, and was referred to SMB by a European company related to Brechteen. Regarding that first contact, Brechteen eventually purchased a machine manufactured by one of SMB's competitors.

SMB maintains North American contacts through a man named Werner Sattler. Plaintiffs characterize Mr. Sattler as an SMB employee while defendant and Mr. Sattler himself assert that Mr. Sattler is an independent sales representative. Whatever his employment status, Mr. Sattler is a Canadian citizen who maintains offices in Montreal, Quebec, and has either an office or a message service in Cincinnati, Ohio. Mr. Sattler was asked to, and did, maintain occasional contact with Brechteen over the next ten years between 1977 and 1987.

As alleged by defendant and not disputed by plaintiffs, in 1989 Brechteen contacted SMB in Braunschweig. After negotiations, Brechteen placed an order for a printing press. The order was verbally given to Wolfgang Specht, SMB's general manager, in Helsinki, Finland. The confirming order was sent by Brechteen to Mr. Sattler in Montreal.

As alleged by defendant and not disputed by plaintiffs, the printing press was manufactured by SMB and inspected, tested and accepted by Brechteen personnel in Braunschweig. Payment was made directly from Brechteen's parent in Weinheim, Germany, to SMB in Braunschweig. Shipment was made to the United States at Brechteen's expense.

SMB provided a technician who visited Brechteen's Mt. Clemens, Michigan plant after the printing press had been installed. Prior to Ms. Brabeau's injury, Brechteen ordered another printing press from SMB. The second printing press was installed at the Mt. Clemens plant after Ms. Brabeau's injury.

As alleged by defendant, and not disputed by plaintiffs, Brechteen elected to locate the press in Michigan; it could have located the machine anywhere in the world. SMB had no control over where Brechteen located the printing press. Further, SMB has given a blanket warranty stating that the printing press "fully complies with all applicable Federal, State and State Subdivision laws and regulations...."

## STANDARD OF REVIEW

It is plaintiffs' burden to establish the existence of personal jurisdiction over defendant. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). A court must interpret the pleadings and affidavits in the light most favorable to plaintiffs. *Id.* Where the court finds that there are no issues of credibility or disputed issues of fact, it may decide the motion on the basis of written

---

1. Zurich is the worker's compensation carrier for Brechteen and has paid benefits to plaintiff for her injuries. Zurich therefore has an interest in recouping any award gained from SMB.

materials. *Andrews Univ. v. Robert Bell Indus.*, 685 F.Supp. 1015, 1017 (W.D.Mich. 1988).

## APPLICABLE LAW

Michigan's corporate general personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.711 (West 1981), reads in relevant part:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> \*   \*   \*   \*   \*   \*
>
> (3) The carrying on of a continuous and systematic part of its general business within the state.

Michigan's corporate limited personal jurisdiction statute, Mich.Comp.Laws Ann. § 600.715 (West 1981), reads in relevant part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> \*   \*   \*   \*   \*   \*
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

## ANALYSIS

The basis for any challenge to personal jurisdiction must begin with an examination of the state's long-arm statutes. In the instant case, it is quite obvious that this court does not have general personal jurisdiction over SMB. SMB does not conduct *any* business within the state of Michigan. Therefore, section 600.711(3) does not apply.

■ The more complicated question is whether this court has limited personal jurisdiction over SMB under Section 600.-715(1), (2) or (5). Once again, because SMB does not conduct *any* business within the state of Michigan, Section 600.715(1) will also not apply. However, this court finds that SMB may have caused "consequences to occur[ ] in the state resulting in an action for tort." Michigan and federal case law is replete with examples of business transactions that have occurred outside the state of Michigan which have "resulted" in an action for tort. Most cases similar to the instant case have held that the word "any" is to be read liberally. Thus, any nexus between transaction and tort shall allow limited personal jurisdiction to operate.

In *Cliffs Forest Prods. Co. v. Al Disdero Lumber Co.*, 144 Mich.App. 215, 225, 375 N.W.2d 397 (1985), *leave denied*, 424 Mich. 896, 384 N.W.2d 8 (1986), the Michigan Court of Appeals held that an architectural firm, which supplied defective roofing plans resulting in the collapse of a Michigan building, could be haled into a Michigan court under limited personal jurisdiction. The Michigan Court of Appeals also has held that the business successor to the seller of a defective and tortious gantry, where the sale took place outside Michigan, could be called into a Michigan court under limited personal jurisdiction. *Wiles v. B.E. Wallace Prods. Corp.*, 25 Mich.App. 300, 303, 181 N.W.2d 323 (1970); *see also J. Henrijean & Sons v. M.V. Bulk Enter.*, 311 F.Supp. 417 (W.D.Mich.1970); *cf. Frazier v. Castellani*, 130 Mich.App. 9, 342 N.W.2d 623 (1983) (decided under individual limited personal jurisdiction statute, Mich. Comp.Laws Ann. § 600.705(2) (West 1981)), *leave denied*, 419 Mich. 935, 355 N.W.2d 112 (1984); *Black v. Rasile*, 113 Mich.App. 601, 318 N.W.2d 475 (1980) (same). It is therefore apparent that Section 600.715(2)

applies to the transaction and alleged injury in the instant case.

■ Further, section 600.715(5) also applies because an SMB technician was sent to help in the installation of the printing press. This was either expressly provided for in the contract for sale or was read into the contract by the parties. In either case, a service was performed by an SMB employee in the state of Michigan. Therefore, section 600.715(5) also applies to the transaction and alleged injury.

■ After establishing that the state allows for personal jurisdiction to attach through its long-arm statute, this court must decide whether the exercise of personal jurisdiction comports with the "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). After close examination of the case law on point, this court holds that the exercise of personal jurisdiction over defendant SMB would offend defendant's due process rights under the fourteenth amendment.

The United States Court of Appeals for the Sixth Circuit has set out three criteria that must be met in order for personal jurisdiction to comport with due process:

(1) defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the foreign state;

(2) the cause of action must arise from defendant's activities in the forum state; and

(3) the acts of defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable.

*LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir.1968); *Ag–Chem Equip. Co. v. Avco Corp.*, 666 F.Supp. 1010, 1013 (W.D.Mich.1987).

First, defendant has not purposefully availed itself of the state of Michigan. This case is similar to the automobile accident examined by the Supreme Court in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). There, plaintiffs purchased an automobile from defendants in New York. While traveling to their new home in Arizona, plaintiffs were injured in Oklahoma in an accident which they blamed on a design defect in the automobile. The Supreme Court held that defendants could not be haled into an Oklahoma court under any guise of personal jurisdiction. In so holding, the Court stated that:

[defendants] carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there.... They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.

*Id.* at 295, 100 S.Ct. at 566.

The above passage applies to the case at bar. SMB carries on no activity in Michigan. SMB closes no sales in Michigan. SMB solicited no business in Michigan. Finally, there is no indication that SMB regularly sells printing presses to Michigan businesses or that SMB targets the Michigan market. The warranty given by SMB is not specific to Michigan but is a boilerplate warranty pertaining to all jurisdictions in the world.

SMB has performed one service in Michigan, that of an SMB technician assisting in the installation of a printing press. However, this one, isolated visit by an SMB employee does not rise to the level of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see also Falkirk Mining Co. v. Japan Steel Works*, 906 F.2d 369, 375

(8th Cir.1990) (one isolated visit did not avail defendants of the forum state).[2]

Further, the plurality opinions of Justices Stevens and O'Connor in *Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), are also instructive. Justice O'Connor, with whom the Chief Justice, Justice Powell and Justice Scalia joined, stated that purposeful availment is not met where defendant neither conducts nor solicits business in the state, has no offices, agents, employees or property in the state, and neither advertises in nor designs its products for sale in the state. *Id.* at 112–13, 107 S.Ct. at 1032–33. Justice Stevens, with whom Justice White and Justice Blackmun joined, assumed that purposeful availment must take into account the volume, value and hazardous character of the products. *Id.* at 122, 107 S.Ct. at 1037 ("over 100,000 units annually over a period of several years would constitute 'purposeful availment' "). The one visit and one printing press at issue do not rise to the level stated by Justice Stevens. Therefore, factor number one of the *LAK* test has not been met.

Second, the one activity of defendant in Michigan, the technician's assistance in installation, may have given rise to Ms. Brabeau's injuries. However, this has not been alleged by plaintiffs. Therefore, factor number two of the *LAK* test has not been met.

Finally, it appears unreasonable to subject SMB to jurisdiction in the state of Michigan. In determining the reasonableness of the exercise of personal jurisdiction, a court must consider

(1) the burden upon defendant;

(2) the interests of the forum state;

(3) plaintiffs' interest in obtaining relief; and

(4) the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction.

*See Asahi,* 480 U.S. at 113, 115, 107 S.Ct. at 1033, 1034 (O'Connor, J., for a unanimous court). The burden placed upon defendant is severe. Defendant must not only travel great distances but must also defend itself in a foreign tribunal.

> The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

*Id.* at 114, 107 S.Ct. at 1034 (O'Connor, J., for a unanimous court).

The interests of the forum state are admittedly great. Every state wishes to shield its citizens from harm and provide an avenue for redress. Further, it is surely in plaintiffs' interest to obtain relief. Finally, there are no great international procedural or substantive policies to cause any concern in this case. However, these are factors to be weighed only when certain minimal contacts have been established. *Id.* (O'Connor, J., for a unanimous court). In the instant case, only the most minimal of minimum contacts have been shown. *See id.* at 112, 107 S.Ct. at 1033 (O'Connor, J., for a four justice plurality); *id.* at 122, 107 S.Ct. at 1038 (Stevens, J., for a three justice plurality). Therefore, *LAK* factor number three is also inapplicable.

Intervening plaintiff Zurich appears to rest its argument on *Kingsley v. Cameron Fabricating Corp.,* No. 1:91–CV–385 (W.D.Mich. Oct. 1, 1991). However, Zurich's reliance is misplaced because *Kingsley* is factually dissimilar. In *Kingsley,* the defendant seeking to avoid personal jurisdiction was a New York corporation and not an alien entity. This fact carries

---

**2.** The "office" allegedly maintained by Mr. Sattler in Ohio is not probative of personal jurisdiction in this case. Subject matter jurisdiction in this case is based upon diversity of citizenship and the underlying claim is based upon state tort law. The necessary contacts needed to be found are those with the forum whose law is being invoked. *Point Landing, Inc. v. Omni Capital Int'l,* 795 F.2d 415, 426 (5th Cir.1986), *aff'd sub nom., Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293–95 (3d Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *L'Europeenne de Banque v. La Republica de Venezuela,* 700 F.Supp. 114, 124 n. 10 (S.D.N.Y.1988). As Michigan law is controlling and not federal law, contacts with the state in which the district court sits are controlling, not contact with the United States as a whole.

some weight. *See Asahi*, 480 U.S. at 114, 107 S.Ct. at 1034 (O'Connor, J., for a unanimous court). Further, as stated in Judge Enslen's opinion, "the machine was specifically designed and intended for installation at a site in Michigan.... [D]efendant built the machine according to specifications adapted to satisfy the needs of the Michigan employer." *Kingsley*, slip op. at 8–9. In the instant case, the machine was not altered or "specifically designed" to suit the needs of a Michigan purchaser. The machine was fungible with all other SMB printers and not directed at the forum state market.

Additionally, the cases cited in *Kingsley* must be read to prohibit the exercise of personal jurisdiction in this case. SMB has no "*meaningful* contacts, ties, or relations" in the Michigan. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (emphasis added) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). In this instant case, SMB went to great pains to avoid availing itself of the forum state. All of the business transactions took place in Germany, Finland and Canada.

> The Supreme Court has stopped short of allowing jurisdiction whenever an out-of-state Defendant contracts with a forum resident.... The actual course of dealing need(s) to be addressed to evaluate, in a "highly realistic" way, the intended future consequences that are the real object of the business transaction.

*Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir.1988). The realistic view of the transactions at issue would point to an avoidance of, not purposeful, availment of the forum state.

■ Finally, Zurich may argue that it was foreseeable that the printing press would cause an injury, thereby subjecting SMB to the laws of any forum in which the machine happened to be installed. However, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Worldwide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566.

Because SMB conducted next to no activity in Michigan, it is unjust to apply personal jurisdiction in this case.

## ORDER

For the foregoing reasons, it is hereby ORDERED that defendant SMB Corporation's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(2) is GRANTED. Plaintiff's complaint is hereby dismissed.

SO ORDERED.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND DENYING INTERVENING PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Juanita Brabeau was allegedly injured at work by a printing press manufactured by defendant SMB Corporation [ "SMB" ]. Ms Brabeau's employer, Brechteen, owned and operated the printing press manufactured by SMB. Plaintiffs filed their complaint in Macomb County Circuit Court. Defendant removed the case to this court October 21, 1991. Subsequently, Zurich Insurance Company [ "Zurich" ] was allowed to intervene as a party-plaintiff by order of this court February 21, 1992. This court dismissed the cause of action March 20, 1992, granting SMB's motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). See page 873. Plaintiffs filed a motion for reconsideration March 26, 1992. Zurich also filed a motion for reconsideration dated March 30, 1992. By leave of the court, defendant filed a response May 4, 1992.

Pursuant to LR 7.1(h)(3) (E.D.Mich. Jan. 1, 1992),

> [t]he movant[s] shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Plaintiffs and intervening plaintiff have failed to demonstrate any palpable defect.

Plaintiffs first argue that the court failed to determine whether Werner Sattler was an employee or an independent sales repre-

880

sentative for SMB. This court did not determine Sattler's relationship with SMB because it was unnecessary to the final outcome. Sattler allegedly maintains an office or employs a message service in Cincinnati, Ohio. This contact is irrelevant to the case at hand because subject matter jurisdiction is based on diversity of citizenship. Therefore,

> [t]he necessary contacts needed to be found are those with the forum whose law is being invoked. *Point Landing, Inc. v. Omni Capital Int'l,* 795 F.2d 415, 426 (5th Cir.1986), *aff'd sub nom., Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97 [108 S.Ct. 404, 98 L.Ed.2d 415] (1987); *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293–95 (3d Cir.1985), *cert. denied,* 474 U.S. 980 [106 S.Ct. 383, 88 L.Ed.2d 336] (1985); *L'Europeenne de Banque v. La Republica de Venezuela,* 700 F.Supp. 114, 124 n. 10 (S.D.N.Y. 1988). As Michigan law is controlling and not federal law, contacts with the state in which the district court sits are controlling, not contact with the United States as a whole.

See page 878 n. 2. Plaintiff's first argument was fully addressed in this court's March 20, 1992 opinion. Further, the weight of the evidence leans toward recognizing Sattler as an independent agent. *See* Sattler aff. at 5 (Oct. 29, 1991); Michael J. Sullivan aff. at 5 (April 30, 1992). The title "Director—North American Sales" appears to be laudatory, not substantive.

■ Second, plaintiffs contend that the "blanket warranty" drafted and signed by SMB somehow conveys personal jurisdiction over SMB. The warranty states in relevant part that the printing press "fully complies with all applicable Federal, State and State subdivision laws and regulations...." This warranty is boilerplate made to be used with any state in this union. Presumably, the warranty could be used in Mexico, Australia or Brazil; or the word "state" could be deleted and the words "province," "lander" or "canton" could be inserted for use in Canada, Germany or Switzerland respectively. The warranty makes no specific reference to

Michigan or the United States, and it should be read as a mere form and not a "purposeful availment."

■ Finally, there still appears to be only one, isolated visit by an SMB employee to Michigan. This issue of physical contacts in Michigan was fully briefed and addressed in this court's March 20, 1992 opinion. The alleged contacts between Sattler and Brechteen in Michigan do not convey personal jurisdiction upon SMB, but they may convey jurisdiction over the person of Werner Sattler.

Zurich raises the March 30, 1992 affidavit of Sullivan, which states, *inter alia,* that Wolfgang Specht visited Brechteen in Michigan to discuss the purchase of yet another SMB printing press. The April 30, 1992 affidavit of Sullivan offered by defendant states that Specht's visit to Michigan was unsolicited by Brechteen. This court has previously noted that

> SMB went to great pains to avoid availing itself of the forum state.... The realistic view of the transactions at issue would point to an avoidance of, not purposeful, availment of the forum state.

See pages 876–77. This additional visit, if true, would not change the character of the business transactions surrounding the initial sale of the first press.

## ORDER

Therefore, it is hereby ORDERED that plaintiffs' motion for reconsideration is DENIED.

It is further ORDERED that intervening plaintiff's motion for reconsideration is DENIED.

SO ORDERED.