Salinas 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00685-CV







Ambrocio Salinas, Appellant



v.



CMMC, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 93-189-C368, HONORABLE BURT CARNES, JUDGE PRESIDING







 This case asks us to determine whether Texas can assert personal jurisdiction over
a foreign corporation that shipped its allegedly defective product to Texas but had no other
significant contacts with the state. Appellee CMMC made a special appearance to contest Texas's
in personam jurisdiction; after a hearing on the issue, the trial court dismissed the suit for lack
of jurisdiction. Appellant Ambrocio Salinas argues in four points of error that Texas may assert
personal jurisdiction over CMMC. Because we agree that assumption of jurisdiction over this
foreign defendant does not offend the constitutional guarantees of due process, we will reverse.



BACKGROUND


 An understanding of the parties' connections with each other, with the forum state,
and with the litigation is essential to answer questions of jurisdiction. 

 In the spring of 1989, Penny Adams, a consultant for Hill Country Cellars,
contacted KLR Machines, Inc. about purchasing a wine press. KLR is an independent distributor
of machinery used in the wine and juice industries. KLR contacted CMMC, a French corporation
that manufactures equipment used for wine production, including the Vaslin CEP 700 wine press
that is the subject of this litigation. In the United States, CMMC sells to customers directly and
through KLR. KLR sells CMMC's products as well as products made by other manufacturers. 
It is unclear from the record whether any other distributors sell CMMC products in the United
States. 

 A significant amount of correspondence and negotiations ensued between Adams
and KLR and between KLR and CMMC; in June 1990 Hill Country agreed to purchase the press
for approximately $44,000. There is no evidence that Adams, or anyone else from Hill Country,
had any direct contact with CMMC. After KLR and Hill Country entered into a contract for the
sale of the press, CMMC sent it FOB from France to the port of Houston. It was then transported
by truck directly to Hill Country in Cedar Park, Texas.

 CMMC does not advertise in the United States, but KLR advertises CMMC's
products in two magazines that have national circulation and are widely read in the wine industry. 
CMMC is aware of KLR's advertising. Neither KLR nor CMMC has a place of business in
Texas. Other than a few isolated sales of equipment in the state, CMMC has no contacts with
Texas.

 Although the sale and the shipping arrangements were made through KLR, the
press was shipped directly to Hill Country from CMMC. The evidence clearly demonstrates that
CMMC knew that the press was being sent to Hill Country for use in Texas. In addition, CMMC
modified the product in accordance with Hill Country's specifications: the electrical system was
rewired to comport with United States electrical standards. CMMC also processed and paid a
warranty claim that Hill Country made through KLR in 1991 when the press had mechanical
problems.

 Salinas, a Hill Country employee, injured his arm on August 7, 1991 while
cleaning the press. On July 29, 1993, Salinas filed this action seeking damages from CMMC and
Vaslin Italia SRL. Both defendants made special appearances to contest jurisdiction. 
Subsequently, Salinas dropped his claims against Vaslin Italia SRL. (1) After hearing evidence at
the special appearance hearing, the trial court dismissed the case for want of jurisdiction over
CMMC.



DISCUSSION


I. The Applicable Law on Personal Jurisdiction

 A nonresident defendant making a special appearance to contest jurisdiction bears
the burden of proof to negate all bases of personal jurisdiction alleged by the plaintiff. Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985). When the facts are undisputed, a
trial court's determination that personal jurisdiction cannot be exercised over a defendant is a
question of law which this Court considers de novo.

 Texas's long-arm statute has consistently been interpreted to allow jurisdiction to
the full extent permitted by the United States Constitution. Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042 (Vernon 1986); see, e.g., Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). 
Therefore, the only limitations on the assertion of jurisdiction by Texas over a nonresident
defendant are those imposed by the Due Process Clause of the Fourteenth Amendment. 
Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 413-14 (1984). It is well established
that personal jurisdiction may be asserted over a nonresident corporate defendant that has
"minimum contacts with [the state] such that the maintenance of the suit does not offend
'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington,
326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The Texas
Supreme Court has recently confirmed its adherence to the federal test. Guardian Royal Exch.
Assurance v. English China Clays, P.L.C., 815 S.W.2d 223, 230 (Tex. 1991).


II. General and Specific Jurisdiction

 Jurisdictional analysis can be separated into two types: general jurisdiction and
specific jurisdiction. See generally Helicopteros, 466 U.S. at 408. A court may exercise specific
jurisdiction over a foreign defendant when the cause of action "arises out of" the defendant's
contacts with the forum. Id. at 414 (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). A
finding that the court has specific jurisdiction over a foreign defendant gives the forum state the
power to adjudicate the particular controversy before the court. General jurisdiction, on the other
hand, allows a state to adjudicate all matters before the court, even if the cause of action is
unrelated to the defendant's contacts with the forum state. Consequently, general jurisdiction,
unlike specific jurisdiction, requires that the defendant have "continuous and systematic" contacts
with the forum state. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438 (1952); see
also National Indus. Sand Ass'n v. Gibson, 38 Tex. Sup. Ct. J. 541, 543 (Apr. 27, 1995); 
Guardian Royal, 815 S.W.2d at 227-28.

 In this case, Salinas's cause of action clearly arises out of CMMC's contacts with
Texas, so our analysis addresses only the issue of specific jurisdiction. To assume specific
jurisdiction, we must determine whether (1) the defendant has "minimum contacts" with Texas,
and (2) the exercise of jurisdiction by Texas courts offends "traditional notions of fair play and
substantial justice." Milliken, 311 U.S. at 463.



 A. Minimum Contacts 

 Despite the Supreme Court's numerous attempts to identify the minimum contacts
required to establish personal jurisdiction, a definitive standard remains elusive. In part, this void
is caused by the fact-bound nature of jurisdictional inquiry and the unsuitability of talismanic
formulas. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 470-71 (1985); Guardian Royal,
815 S.W.2d at 231. In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), the
Court found that a principal purpose of the minimum contacts requirement was to protect the
defendant from unfair surprise. Although the Court rejected the idea that mere foreseeability that
a chattel manufactured or sold by the defendant might find its way into a state was enough to
confer jurisdiction, the Court held that a state "does not exceed its powers under the Due Process
Clause if it asserts personal jurisdiction over a corporation that delivers its products into the
stream of commerce with the expectation that they will be purchased by consumers in the forum
state." Id. at 500-02 (emphasis added).

 World-Wide Volkswagen is not, however, the Supreme Court's last word on
minimum contacts. In Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 106-07 (1987),
a Taiwanese manufacturer of motorcycle inner tubes sued its Japanese supplier of valve stems for
indemnification of its settlement of a personal injury claim. The Court unanimously found that
California's exercise of personal jurisdiction over Asahi was unconstitutional because forcing the
Japanese company to defend itself in California was too great a burden when neither the state nor
the plaintiff had a strong interest in having the case tried in California. Id. at 114-15. Despite
their unanimity in finding a lack of fair play and substantial justice, the Court was evenly split on
whether the defendant had adequate minimum contacts with California. Four justices thought that
merely placing the valve stems into the stream of commerce with the knowledge that some of them
would end up on tires in California was not enough to satisfy the minimum contacts analysis
without some "additional conduct" directed at the forum state. Justice O'Connor wrote:



The placement of a product into the stream of commerce, without more, is not an
act of the defendant purposefully directed toward the forum State. Additional
contact of the defendant may indicate an intent or purpose to serve the market in
the forum State, for example, designing the product for the market in the forum
State, advertising in the forum State, or marketing through a distributor who has
agreed to serve as the sales agent in the forum State. But a defendant's awareness
that the stream of commerce may or will sweep the product into the forum State
does not convert the mere act of placing the product into the stream into an act
purposefully directed toward the forum State.



Id. at 112 (emphasis added). An equal number of justices, however, concluded that under the
"stream of commerce" doctrine no additional action by the defendant was required for specific
jurisdiction, stating that "[a]s long as a participant in [the stream of commerce] is aware that the
final product is being marketed in the forum State, the possibility of a lawsuit there cannot come
as a surprise. Nor will the litigation present a burden for which there is no corresponding
benefit." Id. at 117 (Brennan, J., concurring in part and concurring in the judgment) (emphasis
added).

 Due to the Supreme Court's lack of consensus, federal circuits and state
jurisdictions have also split on what action by the defendant will satisfy the minimum contacts
requirement. Some circuits have elected not to follow the stream of commerce doctrine. E.g.,
Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir. 1994) (adopting Justice
O'Connor's position that additional conduct purposefully directed at forum state is necessary to
assert personal jurisdiction); Tobin v. Astra Pharmaceutical Prods., 993 F.2d 528, 542 (6th Cir.
1993) (same). CMMC cites Brabeau v. SMB Corp., 789 F. Supp. 873 (E.D. Mich. 1992), in
support of its argument that personal jurisdiction should not be exercised in this case. The
Brabeau facts are remarkably similar to those here. In Brabeau, a worker in a Michigan printing
company was injured while using a press manufactured by a German company and sold to the
plaintiff's employer through the manufacturer's North American representative. Id. at 875. The
court refused to assert personal jurisdiction over the German manufacturer, reasoning that the
defendant had not purposefully availed itself of Michigan's laws. Id. at 877. We decline to
follow Brabeau because, unlike the Sixth Circuit, the Fifth Circuit and our supreme court have
embraced Justice Brennan's position that no additional conduct is required if the defendant is
aware that its product is being marketed in the forum state. (2)

 The Fifth Circuit has explicitly adopted the stream of commerce doctrine: "Because
the Court's splintered view of minimum contacts in Asahi provides no clear guidance on this
issue, we continue to gauge [the defendant's] contacts with Texas by the stream of commerce
standard as described in World-Wide Volkswagen and embraced in this circuit." Irving v. Owens-Corning Fiberglas Corp., 864 F.2d 383, 386 (5th Cir. 1989); see also Bean Dredging v. Dredge
Technology, 744 F.2d 1081, 1083-84 (5th Cir. 1984) (holding pre-Asahi that Louisiana could
assert jurisdiction over a component part manufacturer that sold its products to California and did
not know that final product would end up in Louisiana.) The Texas Supreme Court has followed
the same line of reasoning, stating that a "defendant's delivering of its product into the stream of
commerce with the expectation that the product will enter the forum state will ordinarily satisfy
the due process requirement of minimum contacts so as to afford that state personal jurisdiction
over the defendant." Keen v. Ashot Ashkelon, Ltd., 748 S.W.2d 91, 93 (Tex. 1988) (emphasis
added). 

 In Gulf Consolidated Services v. Corinth Pipeworks, S.A., 898 F.2d 1071, 1073
(5th Cir. 1990), the Fifth Circuit extended the application of the stream of commerce doctrine to
contract disputes. In that case, even the dissenting judge agreed that stream of commerce contacts
alone were sufficient to assert jurisdiction over a defendant in a products liability case: "[T]he
public policy considerations that compel the application of the [stream of commerce] rationale in
products liability cases are not present in breach of contract litigation." Id. at 1079 (Reavley,
C.J., dissenting). Moreover, in the recent case of Ruston Gas Turbines v. Donaldson, 9 F.3d 415
(5th Cir. 1993), the court found that an out-of-state subcontractor who shipped component parts
directly to the contractor's Texas customer had sufficient minimum contacts to allow the court to
exercise specific jurisdiction. (3) Accordingly, we will follow the stream of commerce analysis in
determining whether minimum contacts exist. 

 It is clear that CMMC placed the press into the stream of commerce by
manufacturing and marketing it. In this case, CMMC shipped the press directly to Texas. Unlike
the foreign defendant in Asahi, who sold a valve stem to a tire manufacturer in another foreign
country, CMMC sold a completed press to a known user in Texas, albeit through a distributor. 
KLR made no changes to the press once it left France because KLR never had possession of it. 
In Ruston, the Fifth Circuit found the act of shipping the product directly to the forum state to be
significant:




Corchran [the defendant] intentionally placed its products into the stream of
commerce by delivering them to a shipper destined for delivery in Texas. At the
time the goods left Corchran's plant in Minnesota, Corchran not only could have
foreseen that the products might end up in Texas, it knew as a fact that the products
were going to be delivered to a specific user in Houston, Texas.



9 F.3d at 420 (emphasis in original). Like the defendant in Ruston, CMMC knew that the press
was being delivered to a Texas company.

 Moreover, in Gibson, the Texas Supreme Court recently revisited the issue of
minimum contacts. 38 Tex. Sup. Ct. J. at 544-47. In Gibson, the plaintiffs alleged that they were
injured by the out-of-state defendant association's mailing of an insufficient warning about the
dangers of silica to its membership, one of which was a Texas company. Id. at 545. The court
found that sufficient minimum contacts did not exist to support the exercise of specific jurisdiction
in that case: "Jurisdiction based upon the effects of extra-territorial conduct within a particular
forum is proper only when the extra-territorial conduct focuses upon a plaintiff residing in that
forum." Id. at 546. Unlike the defendant in Gibson, CMMC's extra-territorial conduct was
specifically directed at Texas--the shipment from France consisted of one wine press that was
clearly destined for Hill Country. Far from a mass mailing that happened to include one Texas
recipient, this was a single, direct shipment of an item purchased from CMMC by Hill Country.

 We recognize that CMMC did not systematically do business with Texas customers,
nor did it solicit buyers specifically in Texas through advertisements or through an in-state
distributor. It had no direct contact with Hill Country or with anyone in Texas, and it was paid
by KLR. Although CMMC's contacts with Texas are not numerous, we agree with the Fifth
Circuit that a "single act by the defendant directed at the forum state . . . can be enough to confer
personal jurisdiction if that act gives rise to the claim being asserted." Ruston, 9 F.3d at 419. 
In addition to shipping the product directly to Hill Country, CMMC rewired the press in the
manner that the Texas company requested. Even Justice O'Connor in Asahi recognized that
modification for a market in the forum state might be enough "additional conduct" to provide
minimum contacts. 480 U.S. at 112.

 CMMC cites Moore v. Elektro-Mobil Technik GMBH, 874 S.W.2d 324 (Tex.
App.--El Paso 1994, writ denied), asking us to follow the El Paso court's holding that there was
no purposeful availment even though the product was placed into the stream of commerce. In
Moore, a German manufacturer sold amusement rides to an American distributor, Kiddie Rides,
U.S.A. Id. at 329. The court found that Elektro-Mobil "had no knowledge of what happened to
any ride after its initial sale," and noted in a footnote that "[w]e do not suggest, however, that sale
to a domestic distributor will always shield a defendant from long-arm jurisdiction." Id.

 In contrast to Elektro-Mobil, CMMC knew the final destination of its product. Had
CMMC sold the press to KLR who then later, without CMMC's knowledge or involvement, sold
the press to Hill Country, CMMC might be in a position to argue that it had no expectation that
its product would end up in this state. Nor would stream of commerce alone suffice to allow a
Texas court to assert jurisdiction if CMMC had sold its product to an entity in another state who
subsequently and unilaterally transported it to Texas. See, e.g., Rudzewicz, 471 U.S. at 475;
Smith v. Dainichi Kinzoku Kogyo Co., 680 F. Supp. 847 (W.D. Tex. 1988). In this case,
however, CMMC placed its product into the stream of commerce in Texas, unlike Elektro-Mobil,
which placed its product into the stream of commerce in general. We find that such a direct
placement necessarily gives rise to the expectation and awareness that the product will be used in
Texas. 

 This lawsuit cannot come as a surprise to CMMC. It obtained a benefit from the
sale of its product to a Texas company. CMMC could have refrained from delivering its press
to a Texas user if it so chose. When a company ships its product directly to Texas, it should not
be surprised if it is called upon to defend that product in this state. Although the minimum
contacts that exist in this case are not overwhelming, they are enough to persuade us that CMMC
purposefully availed itself of the privileges of conducting business in the state of Texas. 
Accordingly, we hold that there are sufficient minimum contacts between CMMC and Texas to
warrant Texas's assertion of specific jurisdiction over CMMC.



 B. Fair Play and Substantial Justice

 Having found that CMMC has enough contacts with the forum state to satisfy the
minimum contacts analysis, we must still determine whether the assertion of jurisdiction by the
forum state will offend "'traditional notions of fair play and substantial justice.'" International
Shoe, 326 U.S. at 316 (quoting Milliken, 311 U.S. at 463). Such an analysis must take into
consideration several factors: (1) the interests of both the plaintiff and the forum state in
adjudicating the case in Texas, (2) the inconvenience to the defendant of litigating in a foreign
legal system, and (3) the procedural and substantive policies of other nations. Asahi, 480 U.S.
at 114-15.

 It is rare, however, that the exercise of jurisdiction does not satisfy the fair-play
analysis once minimum contacts between the defendant and the forum state have been established. 
Guardian Royal, 815 S.W.2d at 231. In order to overcome the presumption of jurisdiction that
exists once minimum contacts have been established, the defendant must "present a compelling
case that the presence of some other considerations would render jurisdiction unreasonable." 
Rudzewicz, 471 U.S. at 477 (emphasis added). 

 In Asahi, the Supreme Court unanimously decided that the assertion of jurisdiction
over the defendant would be so unfair as to be unconstitutional. 480 U.S. at 116. The Court
noted that the "unique burdens placed upon one who must defend oneself in a foreign legal system
should have significant weight in assessing the reasonableness of stretching the long arm of
personal jurisdiction over national borders," and further admonished that "'[g]reat care and
reserve should be exercised when extending our notions of personal jurisdiction into the
international field.'" Id. at 114 (quoting United States v. First Nat'l City Bank, 379 U.S. 378,
404 (1965) (Harlan, J., dissenting)). In this case, however, the facts do not compel the same
conclusion. First, in Asahi the interests of the plaintiff and the forum state in adjudicating the
dispute in California were slight because the plaintiff was foreign. See also Guardian Royal, 815
S.W.2d at 233 (holding that Texas could not assert jurisdiction over an English defendant because
this state had only a minimal interest in adjudicating suit brought by an English plaintiff). Salinas
is a resident of Texas. As such, he is entitled to the protection of Texas law when bringing suit
for a tort that allegedly occurred in Texas. Second, Texas has a substantial interest in the
protection of its residents' rights against the manufacturer of an allegedly defective product that
was sold to a Texas consumer. It would arguably occasion a greater unfairness and a greater
injustice to force this injured individual to litigate in France than it will to force CMMC, a French
corporation that chose to deliver its product into this state's stream of commerce, to litigate in
Texas. Finally, because the injury giving rise to the cause of action occurred in Texas, it is likely
that the great majority of the evidence and witnesses can be found in this state. We therefore hold
that CMMC has not presented a case compelling enough to convince us that jurisdiction in Texas
is constitutionally prohibited.



CONCLUSION 


 Because we find that CMMC has sufficient minimum contacts with Texas and that
Texas's exercise of personal jurisdiction over CMMC in this case comports with due process
protections, the judgment of the district court is reversed and the cause is remanded for a trial on
the merits.



 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: July 19, 1995

Publish
1. Vaslin Italia SRL was a subsidiary that merged with CMMC and was therefore no longer
a separate entity.
2. [2] Although we distinguish Brabeau on its jurisdictional analysis, we note that the case also
had an important factual difference from the present one. Apparently, the actual purchase and
transfer of possession of the machine was made in Germany by the parent company of the
plaintiff's employer. It was then sent to Michigan by that company, not by the defendant:
"Brechteen [the plaintiff's employer] elected to locate the press in Michigan; it could have
located the machine anywhere in the world. SMB had no control over where Brechteen
located the printing press." Brabeau, 789 F. Supp. at 875.
3. [3] We recognize that in both Gulf and Ruston, the defendants' contacts were significantly
more numerous than CMMC's contacts with Texas. However, the contacts that are present
and the public policy arguments in favor of allowing jurisdiction in products liability cases
nonetheless compel us to find that the CMMC's contacts with Texas are sufficient for specific
jurisdiction.