**Ambrocio SALINAS, Appellant,**

v.

**CMMC, Appellee.**

**No. 03–94–00685–CV.**

Court of Appeals of Texas, Austin.

July 19, 1995.

Rehearing Overruled Aug. 16, 1995.

---

William W. McNeal, McNeal, Garner & Lippe, Lockhart, for appellant.

Michael W. Eady, Brown McCarroll & Oaks Hartline, Austin, for appellee.

Before POWERS, KIDD, and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This case asks us to determine whether Texas can assert personal jurisdiction over a foreign corporation that shipped its allegedly defective product to Texas but had no other significant contacts with the state. Appellee CMMC made a special appearance to contest Texas's *in personam* jurisdiction; after a hearing on the issue, the trial court dismissed the suit for lack of jurisdiction. Appellant Ambrocio Salinas argues in four points of error that Texas may assert personal jurisdiction over CMMC. Because we agree that assumption of jurisdiction over this foreign defendant does not offend the constitutional guarantees of due process, we will reverse.

## BACKGROUND

An understanding of the parties' connections with each other, with the forum state, and with the litigation is essential to answer questions of jurisdiction.

In the spring of 1989, Penny Adams, a consultant for Hill Country Cellars, contacted KLR Machines, Inc. about purchasing a wine press. KLR is an independent distributor of machinery used in the wine and juice industries. KLR contacted CMMC, a French corporation that manufactures equipment used for wine production, including the Vaslin CEP 700 wine press that is the subject of this litigation. In the United States, CMMC sells to customers directly and through KLR. KLR sells CMMC's products as well as products made by other manufacturers. It is unclear from the record whether any other distributors sell CMMC products in the United States.

A significant amount of correspondence and negotiations ensued between Adams and KLR and between KLR and CMMC; in June 1990 Hill Country agreed to purchase the press for approximately $44,000. There is no evidence that Adams, or anyone else from Hill Country, had any direct contact with CMMC. After KLR and Hill Country entered into a contract for the sale of the press, CMMC sent it FOB from France to the port of Houston. It was then transported by truck directly to Hill Country in Cedar Park, Texas.

CMMC does not advertise in the United States, but KLR advertises CMMC's products in two magazines that have national circulation and are widely read in the wine industry. CMMC is aware of KLR's advertising. Neither KLR nor CMMC has a place of business in Texas. Other than a few isolated sales of equipment in the state, CMMC has no contacts with Texas.

Although the sale and the shipping arrangements were made through KLR, the press was shipped directly to Hill Country from CMMC. The evidence clearly demonstrates that CMMC knew that the press was being sent to Hill Country for use in Texas. In addition, CMMC modified the product in accordance with Hill Country's specifications: the electrical system was rewired to comport with United States electrical standards. CMMC also processed and paid a warranty claim that Hill Country made through KLR in 1991 when the press had mechanical problems.

Salinas, a Hill Country employee, injured his arm on August 7, 1991 while cleaning the press. On July 29, 1993, Salinas filed this action seeking damages from CMMC and Vaslin Italia SRL. Both defendants made special appearances to contest jurisdiction. Subsequently, Salinas dropped his claims against Vaslin Italia SRL.[1] After hearing evidence at the special appearance hearing, the trial court dismissed the case for want of jurisdiction over CMMC.

## DISCUSSION

### I. The Applicable Law on Personal Jurisdiction

 A nonresident defendant making a special appearance to contest jurisdiction bears the burden of proof to negate all bases of personal jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985). When the facts are undisputed, a trial court's determination that personal jurisdiction cannot be exercised over a defendant is a question of law which this Court considers *de novo*.

Texas's long-arm statute has consistently been interpreted to allow jurisdiction to the full extent permitted by the United States Constitution. Tex.Civ.Prac. & Rem. Code Ann. § 17.042 (Vernon 1986); *see, e.g., Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Therefore, the only limitations on the assertion of jurisdiction by Texas over a nonresident defendant are those imposed by the Due Process Clause of the Fourteenth Amendment. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). It is well established that personal jurisdiction may be asserted over a nonresident corporate defendant that has "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The Texas Supreme Court has recently confirmed its adherence to the federal test. *Guardian Royal Exch. Assurance v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 (Tex.1991).

### II. General and Specific Jurisdiction

 Jurisdictional analysis can be separated into two types: general jurisdiction and specific jurisdiction. *See generally Helicopteros*, 466 U.S. at 408, 104 S.Ct. at 1868. A court may exercise specific jurisdiction over a foreign defendant when the cause of action "arises out of" the defendant's contacts with the forum. *Id.* at 414, 104 S.Ct. at 1872 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)). A finding that the court has specific jurisdiction over a foreign defendant gives the forum state the power to adjudicate the particular controversy before the court. General jurisdiction, on the other hand, allows a state to adjudicate all matters before the court, even if the cause of action is unrelated to the defendant's contacts with the forum state. Consequently, general jur-

---

1. Vaslin Italia SRL was a subsidiary that merged with CMMC and was therefore no longer a separate entity.

isdiction, unlike specific jurisdiction, requires that the defendant have "continuous and systematic" contacts with the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 415, 96 L.Ed. 485 (1952); *see also National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772–73 (1995); *Guardian Royal*, 815 S.W.2d at 227–28.

■ In this case, Salinas's cause of action clearly arises out of CMMC's contacts with Texas, so our analysis addresses only the issue of specific jurisdiction. To assume specific jurisdiction, we must determine whether (1) the defendant has "minimum contacts" with Texas, and (2) the exercise of jurisdiction by Texas courts offends "traditional notions of fair play and substantial justice." *Milliken*, 311 U.S. at 463, 61 S.Ct. at 343.

### A. Minimum Contacts

■ Despite the Supreme Court's numerous attempts to identify the minimum contacts required to establish personal jurisdiction, a definitive standard remains elusive. In part, this void is caused by the fact-bound nature of jurisdictional inquiry and the unsuitability of talismanic formulas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470–71, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985); *Guardian Royal*, 815 S.W.2d at 231. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court found that a principal purpose of the minimum contacts requirement was to protect the defendant from unfair surprise. Although the Court rejected the idea that mere foreseeability that a chattel manufactured or sold by the defendant might find its way into a state was enough to confer jurisdiction, the Court held that a state "does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the *expectation* that they will be purchased by consumers in the forum state." *Id.* at 500–02, 105 S.Ct. at 2197–99 (emphasis added).

*World–Wide Volkswagen* is not, however, the Supreme Court's last word on minimum contacts. In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 106–07, 107 S.Ct. 1026, 1029–30, 94 L.Ed.2d 92 (1987), a Taiwanese manufacturer of motorcycle inner tubes sued its Japanese supplier of valve stems for indemnification of its settlement of a personal injury claim. The Court unanimously found that California's exercise of personal jurisdiction over Asahi was unconstitutional because forcing the Japanese company to defend itself in California was too great a burden when neither the state nor the plaintiff had a strong interest in having the case tried in California. *Id.* at 114–15, 107 S.Ct. at 1033–34. Despite their unanimity in finding a lack of fair play and substantial justice, the Court was evenly split on whether the defendant had adequate minimum contacts with California. Four justices thought that merely placing the valve stems into the stream of commerce with the knowledge that some of them would end up on tires in California was not enough to satisfy the minimum contacts analysis without some "additional conduct" directed at the forum state. Justice O'Connor wrote:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. *Additional contact of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, or marketing through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.*

*Id.* at 112, 107 S.Ct. at 1032 (emphasis added). An equal number of justices, however, concluded that under the "stream of commerce" doctrine no additional action by the defendant was required for specific jurisdiction, stating that "[a]s long as a participant in [the stream of commerce] is *aware that the final product is being marketed in the forum State,* the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation

present a burden for which there is no corresponding benefit." *Id.* at 117, 107 S.Ct. at 1034–35 (Brennan, J., concurring in part and concurring in the judgment) (emphasis added).

Due to the Supreme Court's lack of consensus, federal circuits and state jurisdictions have also split on what action by the defendant will satisfy the minimum contacts requirement. Some circuits have elected not to follow the stream of commerce doctrine. *E.g., Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir.1994) (adopting Justice O'Connor's position that additional conduct purposefully directed at forum state is necessary to assert personal jurisdiction); *Tobin v. Astra Pharmaceutical Prods.*, 993 F.2d 528, 542 (6th Cir.1993) (same). CMMC cites *Brabeau v. SMB Corp.*, 789 F.Supp. 873 (E.D.Mich.1992), in support of its argument that personal jurisdiction should not be exercised in this case. The *Brabeau* facts are remarkably similar to those here. In *Brabeau*, a worker in a Michigan printing company was injured while using a press manufactured by a German company and sold to the plaintiff's employer through the manufacturer's North American representative. *Id.* at 875. The court refused to assert personal jurisdiction over the German manufacturer, reasoning that the defendant had not purposefully availed itself of Michigan's laws. *Id.* at 877. We decline to follow *Brabeau* because, unlike the Sixth Circuit, the Fifth Circuit and our supreme court have embraced Justice Brennan's position that no additional conduct is required if the defendant is aware that its product is being marketed in the forum state.[2]

The Fifth Circuit has explicitly adopted the stream of commerce doctrine: "Because the Court's splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue, we continue to gauge [the defendant's] contacts with Texas by the stream of commerce standard as described in *World-Wide Volkswagen* and embraced in this circuit." *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir.1989); *see also Bean Dredging v. Dredge Technology*, 744 F.2d 1081, 1083–84 (5th Cir.1984) (holding pre–*Asahi* that Louisiana could assert jurisdiction over a component part manufacturer that sold its products to California and did not know that final product would end up in Louisiana.) The Texas Supreme Court has followed the same line of reasoning, stating that a "defendant's delivering of its product into the stream of commerce with the *expectation* that the product will enter the forum state will ordinarily satisfy the due process requirement of minimum contacts so as to afford that state personal jurisdiction over the defendant." *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91, 93 (Tex.1988) (emphasis added).

In *Gulf Consolidated Services v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.1990), the Fifth Circuit extended the application of the stream of commerce doctrine to contract disputes. In that case, even the dissenting judge agreed that stream of commerce contacts alone were sufficient to assert jurisdiction over a defendant in a products liability case: "[T]he public policy considerations that compel the application of the [stream of commerce] rationale in products liability cases are not present in breach of contract litigation." *Id.* at 1079 (Reavley, C.J., dissenting). Moreover, in the recent case of *Ruston Gas Turbines v. Donaldson*, 9 F.3d 415 (5th Cir.1993), the court found that an out-of-state subcontractor who shipped component parts directly to the contractor's Texas customer had sufficient minimum contacts to allow the court to exercise specific jurisdiction.[3] Accordingly, we will follow the

---

**2.** Although we distinguish *Brabeau* on its jurisdictional analysis, we note that the case also had an important factual difference from the present one. Apparently, the actual purchase and transfer of possession of the machine was made in Germany by the parent company of the plaintiff's employer. It was then sent to Michigan by that company, not by the defendant: "Brechteen [the plaintiff's employer] elected to locate the press in Michigan; it could have located the machine anywhere in the world. SMB had no control over where Brechteen located the printing press." *Brabeau*, 789 F.Supp. at 875.

**3.** We recognize that in both *Gulf* and *Ruston*, the defendants' contacts were significantly more numerous than CMMC's contacts with Texas. However, the contacts that are present and the public policy arguments in favor of allowing jurisdiction in products liability cases nonetheless compel us to find that the CMMC's contacts with Texas are sufficient for specific jurisdiction.

stream of commerce analysis in determining whether minimum contacts exist.

■ It is clear that CMMC placed the press into the stream of commerce by manufacturing and marketing it. In this case, CMMC shipped the press directly to Texas. Unlike the foreign defendant in *Asahi*, who sold a valve stem to a tire manufacturer in another foreign country, CMMC sold a completed press to a known user in Texas, albeit through a distributor. KLR made no changes to the press once it left France because KLR never had possession of it. In *Ruston*, the Fifth Circuit found the act of shipping the product directly to the forum state to be significant:

> Corchran [the defendant] intentionally placed its products into the stream of commerce by delivering them to a shipper destined for delivery in Texas. At the time the goods left Corchran's plant in Minnesota, Corchran not only *could have foreseen* that the products might end up in Texas, it *knew* as a fact that the products were going to be delivered to a specific user in Houston, Texas.

9 F.3d at 420 (emphasis in original). Like the defendant in *Ruston*, CMMC knew that the press was being delivered to a Texas company.

Moreover, in *Gibson*, the Texas Supreme Court recently revisited the issue of minimum contacts. 897 S.W.2d at 773–76. In *Gibson*, the plaintiffs alleged that they were injured by the out-of-state defendant association's mailing of an insufficient warning about the dangers of silica to its membership, one of which was a Texas company. *Id.* at 774–75. The court found that sufficient minimum contacts did not exist to support the exercise of specific jurisdiction in that case: "Jurisdiction based upon the effects of extra-territorial conduct within a particular forum is proper only when the extra-territorial conduct focuses upon a plaintiff residing in that forum." *Id.* at 776. Unlike the defendant in *Gibson*, CMMC's extra-territorial conduct was specifically directed at Texas—the shipment from France consisted of one wine press that was clearly destined for Hill Country. Far from a mass mailing that happened to include one Texas recipient, this was a single, direct shipment of an item purchased from CMMC by Hill Country.

We recognize that CMMC did not systematically do business with Texas customers, nor did it solicit buyers specifically in Texas through advertisements or through an in-state distributor. It had no direct contact with Hill Country or with anyone in Texas, and it was paid by KLR. Although CMMC's contacts with Texas are not numerous, we agree with the Fifth Circuit that a "single act by the defendant directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Ruston*, 9 F.3d at 419. In addition to shipping the product directly to Hill Country, CMMC rewired the press in the manner that the Texas company requested. Even Justice O'Connor in *Asahi* recognized that modification for a market in the forum state might be enough "additional conduct" to provide minimum contacts. 480 U.S. at 112, 107 S.Ct. at 1032.

CMMC cites *Moore v. Elektro–Mobil Technik GmbH*, 874 S.W.2d 324 (Tex.App.—El Paso 1994, writ denied), asking us to follow the El Paso court's holding that there was no purposeful availment even though the product was placed into the stream of commerce. In *Moore*, a German manufacturer sold amusement rides to an American distributor, Kiddie Rides, U.S.A. *Id.* at 329. The court found that Elektro–Mobil "had no knowledge of what happened to any ride after its initial sale," and noted in a footnote that "[w]e do not suggest, however, that sale to a domestic distributor will always shield a defendant from long-arm jurisdiction." *Id.*

■ In contrast to Elektro–Mobil, CMMC knew the final destination of its product. Had CMMC sold the press to KLR who then later, without CMMC's knowledge or involvement, sold the press to Hill Country, CMMC might be in a position to argue that it had no expectation that its product would end up in this state. Nor would stream of commerce alone suffice to allow a Texas court to assert jurisdiction if CMMC had sold its product to an entity in another state who subsequently and unilaterally transported it to Texas. *See, e.g., Rudzewicz*, 471 U.S. at 475, 105

S.Ct. at 2183; *Smith v. Dainichi Kinzoku Kogyo Co.,* 680 F.Supp. 847 (W.D.Tex.1988). In this case, however, CMMC placed its product into the stream of commerce *in Texas,* unlike Elektro–Mobil, which placed its product into the stream of commerce in general. We find that such a direct placement necessarily gives rise to the expectation and awareness that the product will be used in Texas.

This lawsuit cannot come as a surprise to CMMC. It obtained a benefit from the sale of its product to a Texas company. CMMC could have refrained from delivering its press to a Texas user if it so chose. When a company ships its product directly to Texas, it should not be surprised if it is called upon to defend that product in this state. Although the minimum contacts that exist in this case are not overwhelming, they are enough to persuade us that CMMC purposefully availed itself of the privileges of conducting business in the state of Texas. Accordingly, we hold that there are sufficient minimum contacts between CMMC and Texas to warrant Texas's assertion of specific jurisdiction over CMMC.

### B. *Fair Play and Substantial Justice*

■ Having found that CMMC has enough contacts with the forum state to satisfy the minimum contacts analysis, we must still determine whether the assertion of jurisdiction by the forum state will offend " 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken,* 311 U.S. at 463, 61 S.Ct. at 343). Such an analysis must take into consideration several factors: (1) the interests of both the plaintiff and the forum state in adjudicating the case in Texas, (2) the inconvenience to the defendant of litigating in a foreign legal system, and (3) the procedural and substantive policies of other nations. *Asahi,* 480 U.S. at 114–15, 107 S.Ct. at 1033–34.

■ It is rare, however, that the exercise of jurisdiction does not satisfy the fair-play analysis once minimum contacts between the defendant and the forum state have been established. *Guardian Royal,* 815 S.W.2d at 231. In order to overcome the presumption of jurisdiction that exists once minimum contacts have been established, the defendant must "present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable." *Rudzewicz,* 471 U.S. at 477, 105 S.Ct. at 2184–85 (emphasis added).

■ In *Asahi,* the Supreme Court unanimously decided that the assertion of jurisdiction over the defendant would be so unfair as to be unconstitutional. 480 U.S. at 116, 107 S.Ct. at 1035. The Court noted that the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," and further admonished that " '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Id.* at 114, 107 S.Ct. at 1033 (quoting *United States v. First Nat'l City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). In this case, however, the facts do not compel the same conclusion. First, in *Asahi* the interests of the plaintiff and the forum state in adjudicating the dispute in California were slight because the plaintiff was foreign. *See also Guardian Royal,* 815 S.W.2d at 233 (holding that Texas could not assert jurisdiction over an English defendant because this state had only a minimal interest in adjudicating suit brought by an English plaintiff). Salinas is a resident of Texas. As such, he is entitled to the protection of Texas law when bringing suit for a tort that allegedly occurred in Texas. Second, Texas has a substantial interest in the protection of its residents' rights against the manufacturer of an allegedly defective product that was sold to a Texas consumer. It would arguably occasion a greater unfairness and a greater injustice to force this injured individual to litigate in France than it will to force CMMC, a French corporation that chose to deliver its product into this state's stream of commerce, to litigate in Texas. Finally, because the injury giving rise to the cause of action occurred in Texas, it is likely that the great majority of the evidence and witnesses can be found in this state. We

therefore hold that CMMC has not presented a case compelling enough to convince us that jurisdiction in Texas is constitutionally prohibited.

## CONCLUSION

Because we find that CMMC has sufficient minimum contacts with Texas and that Texas's exercise of personal jurisdiction over CMMC in this case comports with due process protections, the judgment of the district court is reversed and the cause is remanded for a trial on the merits.